1  Mark A. Redmond, SBN 161520
   Law Office of Mark A. Redmond PC
2  701 Howe Avenue, Suite A-3
   Sacramento, CA 95825
3  Telephone: (916) 444-8240
   Facsimile: (916) 444-8242
4  Email: mr@markredmondlaw.com

5  Kresta Nora Daly, SBN 199689
   **BARTH DALY LLP**
6  431 "I" Street, Suite 201
   Sacramento, California 95814
7  Telephone: (916) 440-8600
   Facsimile:  (916) 440-9610
8  Email:  kdaly@barth-daly.com

9  Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| JOSHUA HECKATHORN, | Case No. 1:17-CV-01416-AWI-JLT |
|---|---|
| Plaintiff, | **SECOND AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS** |
| v. | **(42 U.S.C. § 1983)** |
| R. RUIZ, J. FOSTER, B. MORSE, S. ZARRIS, R. RUVALCABA, P. PEREZ, and DOES 1 through 75, inclusive, in their official and personal/individual capacities, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Joshua Heckathorn (hereinafter Plaintiff) upon information and belief, alleges the following:

**INTRODUCTION**

1. This civil rights action seeks compensatory and punitive damages from Defendants for brutally beating Plaintiff Joshua Heckathorn, without justification, while he was incarcerated at the California Correctional Institution (hereinafter "CCI Tehachapi") located at 24900 Highway 202, Tehachapi, California.

2. On or about July 20, 2016 Mr. Heckathorn was brutally beaten by prison guards.

Plaintiff was repeatedly kicked and punched. Plaintiff suffered numerous injuries, including, but not limited to a concussion and severe damage to his hands. The full extent of his injuries is currently unknown. After being released from the hospital Defendants retaliated against Plaintiff by housing him in the Secure Housing Unit (herein after "SHU").

## JURISDICTION AND VENUE

3. This is an action for money damages brought pursuant to Title 42 of the United States Code, Sections 1983 and 1988; the Eighth and Fourteenth Amendments of the United States Constitution against various correctional employees then working at the California Correctional Institution in Tehachapi.

4. Jurisdiction is conferred upon this Court by Title 42 of the United States Code, Sections 1331 (federal question) and 1343 (civil rights).

5. Venue lies in the Eastern District of California pursuant to Title 28, United States Code Section 1367, as the unlawful acts and practices alleged herein occurred in and around the City of Tehachapi, County of Kern, California, which is within this judicial district.

## PARTIES

6. Plaintiff Joshua Heckathorn is, and was at all times mentioned herein, an individual and citizen of the United States of America, resident of the City of Tehachapi, County of Kern.

7. California Department of Corrections and Rehabilitation Sergeant R. Ruiz was employed as a correctional officer working at California Correctional Institution [hereinafter CCI]. Sergeant Ruiz was acting under color of state law. Ruiz is being sued in his/her individual capacity.

8. California Department of Corrections and Rehabilitation Sergeant J. Foster was employed as a correctional officer working at CCI. Sergeant Foster was acting under color of state law. Foster is being sued in his/her individual capacity.

9. California Department of Corrections and Rehabilitation Officer R. Ruvalcaba was employed as a correctional officer working at CCI. Officer Ruvalcaba was acting under color of state law. Ruvalcaba is being sued in his/her individual capacity.

10. California Department of Corrections and Rehabilitation Officer Shannon Zarris was

employed as a correctional officer working at CCI.  Officer Zarris was acting under color of state law.  Zarris is being sued in her individual capacity.

11. California Department of Corrections and Rehabilitation Officer P. Perez was employed as a correctional officer working at CCI.  Officer Perez was acting under color of state law.  Perez is being sued in his/her individual capacity.

12. California Department of Corrections and Rehabilitation Officer B. Morse was employed as a correctional officer working at CCI.  Officer Morse was acting under color of state law.  Morse is being sued in his/her individual capacity.

13. Upon information and belief, Doe Defendants 1through 75 correctional employees also involved in the assault on Mr. Heckathorn, were acting under color of state law.  The true name and identity of Doe Defendants 1 through 75 are presently unknown to Plaintiff.  Plaintiff will seek to amend this complaint as soon as the true names and identities of these defendants are learned.  Does are being sued in their individual and professional capacities.

14. Plaintiff is informed and believes, and thereon alleges that each Defendant is, and at all times mentioned was, the agent, employee, representative successor and/or assignee of each other Defendant.  Each Defendant, in doing the acts, or in omitting to act as alleged in this Complaint, was acting within the scope of his or her actual and apparent authority or the alleged acts and omissions of each Defendant as agent were subsequently adopted and ratified by each other Defendant as principal.  Plaintiff is informed and believes that each of the individual Defendants was in some way responsible for the constitutional violations and torts alleged in this complaint.

15. In committing the acts alleged in this complaint, Defendants acted knowingly, maliciously, and with reckless or callous disregard for the constitutional rights of Plaintiff, justifying an award of punitive damages under federal law against each Defendant.

## FACTS

16. At the time he was assaulted Joshua Heckathorn was 29 years old.  On July 20, 2016 Mr. Heckathorn was being transferred from Corcoran State Prison to CCI.  Mr. Heckathorn had previously been classified to the Special Needs Yard [hereinafter SNY].  Mr. Heckathorn suffers

from asthma, a medical condition of which CDCR was aware. Mr. Heckathorn was looking forward to the transfer because it placed him closer to his elderly parents. Additionally, the move to CCI was to a less secure prison where Mr. Heckathorn would have more privileges.

17. There were approximately 20 inmates in the CCI Facility Receiving and Release [hereinafter R&R]. All of the inmates are believed to be classified as SNY. The inmates, including Mr. Heckathorn, were in the R&R area for an extended period of time. Due to the prolonged period of time they were in R&R the inmates were served a meal.

18. An unknown inmate [hereinafter Inmate One] refused to take his food tray when offered by prison staff. This refusal resulted in a verbal altercation between Inmate One and a CDCR officer. The cell in which Inmate One was standing opened and Inmate One and the CDCR officer engaged in a physical altercation. Other officers became involved.

19. Joshua Heckathorn watched while Inmate One was punched, kicked and sprayed by CDCR officers. After being sprayed with pepper spray, Inmate One was removed from R&R. Inmate One's arm was reportedly broken during the altercation.

20. The pepper spray was used in an area that is inadequately ventilated. Mr. Heckathorn was covered in pepper spray, which caused him to have a severe asthma attack; he began coughing and choking. Mr. Heckathorn repeatedly asked to be moved. Sergeant R. Ruiz repeatedly told Mr. Heckathorn to "shut up" and "stop crying like a girl". Mr. Heckathorn began to lose consciousness.

21. Nurse T. Flack and R. Ruiz ultimately removed Mr. Heckathorn from his cell and placed him in a chair to take his vitals. Mr. Heckathorn and Sergeant R. Ruiz exchanged words. Sergeant R. Ruiz threw something to the ground and moved towards Mr. Heckathorn. Mr. Heckathorn felt threatened by Sergeant R. Ruiz. Mr. Heckathorn had just witnessed officers beat another inmate minutes before and he believed Sergeant R. Ruiz was going to hit him. Mr. Heckathorn observed Sergeant R. Ruiz's hands were balled into fists as he approached Mr. Heckathorn and Ruiz had a threatening look on his face. Mr. Heckathorn got up out of the chair to face Sergeant R. Ruiz. Sergeant R. Ruiz punched Mr. Heckathorn, Mr. Heckathron responded by defending himself.

22. Sergeant R. Ruiz began punching Mr. Heckathorn in the face and upper torso. Sergeant J. Foster and Officer B. Morse became involved in the altercation. Foster and Morse hit, punched, kicked and struck Mr. Heckathorn with batons. Additional correctional officers responded, including Officers P. Perez, S. Zarris, R. Ruvalcaba and others currently unknown to Mr. Heckathorn. All officers struck Mr. Heckathorn with their fists, legs, and batons and sprayed him with pepper spray on multiple occasions. At one point Mr. Heckathorn was shot with at least one rubber bullet from something resembling a 40mm multi launcher.

23. Mr. Heckathorn was lying on the floor barely conscious and heard other inmates shouting "you killed him" and "he's dead". Officers told him to walk to the stretcher, however his legs having been pulverized by baton strikes, would not carry him. An officer assisted Heckathorn to a gurney. He was initially sent to the medical unit at the prison. He was subsequently brought by ambulance to the Kern Medical Center. He was treated for less than a day and returned to the SHU at Corcoran.

24. Kern Medical Center determined Mr. Heckathron had broken left and right hands, a concussion, multiple broken fingers, he required stitches in both hands due to lacerations, his left elbow was stapled shut, he required stitches above his left eyebrow and across his forehead, both his legs required numerous staples. Mr. Heckathorn required 13 staples to close the lacerations on his head. When Mr. Heckathorn was released from the hospital he had no fewer than 31 staples, 12 stitches and a cast on each hand.

**AFTERMATH**

25. In the aftermath of the assault, and in an effort to cover up the brutal beating Mr. Heckathorn received at the hands of the officers, several individuals gave deliberately false or incomplete statements. This was done in an attempt to avert or deny responsibility for Mr. Heckathorn's injuries.

26. The incident reports from the correctional officials in this case are internally inconsistent. Different officers have very different versions of events – different officers present, and different officers engaged in different conduct. One report states there were at least twenty inmates in R&R when the assault began yet the identities of these witnesses are not contained in

{00024503}

any of the reports.  Most reports don't mention there being any non-correctional staff present.  None of the correctional officers recount the incident earlier in the day which resulted in Mr. Heckathorn being pepper-sprayed.  That information was documented solely by medical staff.

27.  Mr. Heckathorn's family did not learn he had been injured or hospitalized for weeks. Mr. Heckathorn was disciplined by CDCR.  In an effort to cover up the beating CDC found Mr. Heckathorn assaulted an officer.  As punishment, among other things, Mr. Heckathorn has been in the SHU in Corcoran since this incident.  Placing Mr. Heckathorn in the SHU was an additional effort to cover up CDC's wrongful conduct because while in the SHU Mr. Heckathorn has little contact with the outside world, making it difficult to inform his family of what happened or secure legal representation.

28.  Mr. Heckathorn continues to suffer pain on a daily basis which was directly caused by the beating he received at the hands of correctional staff.

## **FIRST CAUSE OF ACTION**

### **(Excessive Force)**

### **(42 USC §1983 AGAINST ALL DEFENDANTS)**

29.  Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 28 of this Complaint with the same force and effect as if fully set forth herein.

30.  Defendants R. Ruiz, J. Foster, Officer B. Morse, P. Perez, S. Zarris, R. Ruvalcaba and Doe Defendants 1 through 75 brutally beat Plaintiff without justification.  Said defendants punched, kicked and beat Heckathorn with batons without justification.  They continued to beat Plaintiff after he was on the floor and unable to defend himself and was done for the purpose of causing harm.  The beating was so severe it resulted in a concussion and numerous injuries to Plaintiff's head, hands and legs.  This beating constituted excessive force against Plaintiff in violation of his Eighth Amendment rights.

31.  Defendants' use of excessive force caused Plaintiff severe physical injuries, including but not limited to pain and suffering, extreme emotional distress, fear, trauma and humiliation, bruises over his entire body, lacerations and abrasions, a concussion, and permanent damage to his hands and fingers.

32. Plaintiff alleges the acts of the individual Defendants were willful, malicious, intentional, oppressive, and reckless and/or were done in willful and conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

33. As a direct and legal result of Defendants' acts and omissions, Plaintiff has suffered damages, including, and without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries, attorneys' fees and cost of suit, and other pecuniary losses not yet ascertained.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.

## **PRAYER**

Wherefore Plaintiff requests entry of judgment in his favor and against Defendants as follows:

A. For compensatory damages in an amount to be determined at trial;

B. For punitive damages against individual Defendants in an amount to be proven at trial;

C. For reasonable costs of this suit and attorneys' fees; and

D. For such further relief as the Court may deem proper, just and appropriate.

Dated: April 13, 2018.          Respectfully submitted,

BARTH DALY LLP

By    /s/ Kresta Nora Daly
        KRESTA NORA DALY

Attorneys for Plaintiff